<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOSEPH WITRIOL, individually and on behalf of all others similarly situated,

        Plaintiffs,

        v.

CONEXANT SYSTEMS, INC., DWIGHT W. DECKER, ARMANDO GEDAY, ROBERT MCMULLAN, and SCOTT J. BLOUIN,

        Defendants.

Hon. Stanley R. Chesler, U.S.D.J.

Civil Action No. 04-6219 (SRC)

**OPINION**

**<u>CHESLER, District Judge</u>**

    This matter comes before this Court on the motion to dismiss the Second Amended Class Action Complaint for failure to state a claim upon which relief can be granted, pursuant to FED. R. CIV. P. 12(b)(6), by Defendants Conexant Systems, Inc., Dwight W. Decker, Armando Geday, Robert McMullan, and Scott J. Blouin (collectively, "Defendants"). For the reasons set forth below, Defendants' motion to dismiss is **GRANTED**.

<u>**BACKGROUND**</u>

    This case stems from a dispute over alleged violations of federal securities laws. Defendant Conexant Systems, Inc. ("Conexant") is a corporation organized under the laws of Delaware; it produces electronics. Defendants Dwight W. Decker, Armando Geday, Robert McMullan, and Scott J. Blouin are present or former officers and directors of Conexant.

Plaintiffs are a class of purchasers of the publicly traded stock of Conexant, purchased during the Class Period (March 1, 2004 through November 4, 2004); on April 6, 2005, this Court appointed Phillips Group as lead Plaintiff.

In brief, Plaintiffs' Second Amended Class Action Complaint (the "SAC"), filed December 5, 2005, makes the following factual allegations. Conexant acquired Globespan Virata, Inc. on February 27, 2004 (the "Globespan Acquisition"). During the Class Period, Defendants made false and misleading statements that the integration of Conexant and Globespan was proceeding successfully; Plaintiffs contend that the integration of the two companies was very troubled. Also, "[t]he Company failed to regularly assess[] its inventory levels to ensure that the Company's inventories would not exceed the foreseeable demand and continued to stuff its distribution channels, which caused its revenues to be artificially inflated . . . to conceal the integration problems afflicting Conexant." (SAC ¶ 81(f).) Plaintiffs refer to this as the "channel-stuffing." (See, e.g., SAC ¶ 81(h).)

Plaintiffs allege that Defendants engaged in a fraudulent scheme to conceal these problems, artificially inflating the stock price. When the truth came out, the stock price dropped.

The Second Amended Class Action Complaint alleges three causes of action: 1) Defendants engaged in securities fraud in violation of § 10(b) of the Exchange Act and Rule 10b-5; 2) the individual Defendants are subject to control person liability under § 20(a) of the Exchange Act; and 3) Defendants McMullan and Blouin violated § 18(a) of the Exchange Act through their involvement in Conexant's SEC filings. On February 6, 2006, Defendants filed the instant motion to dismiss the SAC.

## ANALYSIS

**I.      Governing Legal Standards**

      A.      Standard for a Rule 12(b)(6) Motion to Dismiss

On a motion to dismiss for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6), the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 (3d Cir. 1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. See Morse v. Lower Merion School District, 132 F.3d 902, 906 n.8 (3d Cir. 1997). All reasonable inferences, however, must be drawn in the plaintiff's favor. See Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987). Moreover, the claimant must set forth sufficient information to outline the elements of his or her claims or to permit inferences to be drawn that the elements exist. See FED. R. CIV. P. 8(a)(2); Conley, 355 U.S. at 45-46. "The defendant bears the burden of showing that no claim has been presented." Hedges v. United

States, 404 F.3d 744, 750 (3d Cir. 2005).

The Supreme Court has characterized dismissal with prejudice as a "harsh remedy." New York v. Hill, 528 U.S. 110, 118 (2000). Dismissal of a count in a complaint with prejudice is appropriate if amendment would be inequitable or futile. "When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

## II.  Defendants' 12(b)(6) Motion to Dismiss

### A.  The First Claim: Violation of § 10(b) and Rule 10b-5

Defendants move to dismiss Plaintiffs' First Claim, for violation of § 10(b) of the Exchange Act and Rule 10b-5, on several grounds, including failure to adequately allege loss causation, and failure to plead fraud with particularity. Because this Court finds that Plaintiffs have failed to adequately plead scienter, it need not reach the remaining arguments for dismissal.[1]

There are six basic elements that must be pled to state a claim of securities fraud in violation of § 10(b): (1) a material misrepresentation (or omission); (2) scienter, i.e., a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 341-342 (2005).

The Third Circuit restated the requirements for pleading the element of scienter in a § 10(b) claim in In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 276 (3d Cir. 2006). The

---

[1] This Court also has concerns that the fraud claims come perilously close to invalidity under the rule of Craftmatic Sec. Litigation v. Kraftsow, 890 F.2d 628, 639 (3d Cir. 1989) ("allegations of failure to disclose mismanagement alone do not state a claim under federal securities law"). As noted, this Court need not reach this issue to rule on the motion to dismiss.

Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, requires that a plaintiff "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."[2]  15 U.S.C. § 78u-4(b)(2).  "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  Suprema, 438 F.3d at 276.  Defendants contend that the allegations of scienter in the First Claim are insufficient under both of these two prongs.

The Second Amended Complaint claims to address scienter in four sections.  First, the SAC purports to address the scienter of the individual Defendants in ¶¶ 61-67.  Despite the heading, "The Individual Defendants' Scienter," this section makes no particularized allegations about the mental state of the individual Defendants in regard to the false statements.  Rather, the section only alleges with particularity some aspects of the compensation arrangements of the individual Defendants, asserting generally that they were motivated by financial gain to accomplish the merger and conceal its problems.

The SAC next details the false and misleading statements made during the class period, addressing scienter in two places, ¶¶ 81 and 90.  In ¶ 81, Plaintiffs make broad, general allegations about the mental state of Defendants in reference to statements in the March 1, 2004 press release (¶¶ 74-75), the second quarter 2004 earnings release (¶¶ 76-77), the April 26, 2004

---

[2] The particularity requirement also derives support from FED. R. CIV. P. 9(b).  See In re Advanta Corp. Sec. Litig., 180 F.3d 525, 539 (3d Cir. 1999).

conference call (¶ 78), and the second quarter 2004 10-Q (¶¶ 79-80).[3] These allegations suffer from several defects. First, and most importantly, they do not state facts with particularity. Within ¶ 81, there are eight assertions. Not one of them makes a statement about a particular person or a particular event. Rather, they are all general and conclusory. They make general assertions covering four different events, without identifying specific statements made by specific people, or the particular circumstances associated with a particular statement. They provide only conclusions about the mental states of Defendants (e.g., "Defendants knew or recklessly disregarded the fact that there was too much overlap between Conexant's and Globespan's products . . .", ¶ 81(e)). These vague and conclusory assertions do not meet the particularity requirement of the PSLRA.

Similarly, in ¶ 90, Plaintiffs make allegations about the mental state of Defendants in reference to statements in the July 6, 2004 earnings warning (¶¶ 82-83), the July 6, 2004 conference call (¶ 84), the third quarter 2004 earnings release (¶¶ 85-86), the July 29, 2004 conference call (¶ 87), the third quarter 2004 10-Q (¶ 88), and the September 30, 2004 press release (¶ 89). The seven assertions which follow are, again, general and conclusory; every statement made above about ¶ 81 applies equally here. These vague and conclusory allegations do not meet the particularity requirement of the PSLRA.

The fourth section of the SAC which purports to address scienter is comprised by ¶¶ 109-

---

[3] The first sentence of ¶ 81 foreshadows the problem that follows: "The statements in paragraphs 74 through 80 were each false and misleading when made because they misrepresented and omitted material adverse facts . . ." Although the use of "they" suggests an assertion about the people who made the misrepresentations, the antecedent for "they" appears to be the statements themselves, not the people who made them; ¶ 81 contains no allegations which address the mental state of any particular person making any particular statement.

127. This section begins with general and conclusory allegations of scienter (¶¶ 109-111). Next (¶¶ 112-119), Plaintiffs again make detailed allegations about the individual Defendants' compensation arrangements.

The next part (¶¶ 120-124) purports to allege that the individual Defendants had actual knowledge of the fraud, based on the statements of confidential witnesses (referred to as "CW"), but nothing is alleged with the necessary particularity. In ¶ 120, Plaintiffs allege that "CW-1 stated that because of the integration problems, 'We weren't able to meet the commitment to our customers, which led to the loss of business.'" This does not state with particularity facts giving rise to a strong inference that a Defendant acted with the required state of mind; it does not speak to what a particular Defendant knew, or when.

In ¶ 121, Plaintiffs allege that CW-2, CW-5,[4] and CW-6 described problems with the integration of the companies. Again, this does not state with particularity facts giving rise to a strong inference that a defendant acted with the necessary state of mind. Similarly, in ¶ 122, Plaintiffs allege that CW-3, CW-4, and CW-7 described channel-stuffing. Again, this does not state with particularity facts giving rise to a strong inference that a defendant acted with the necessary state of mind. To plead scienter, it is not sufficient to allege that the integration was problematic or that channel-stuffing occurred. The key issue is what the individual Defendants *knew* about the integration problems and the channel-stuffing, or whether these were so obvious

---

[4] In ¶ 58, Plaintiffs state that CW-5 "said that there were obvious integration problems that far exceeded what one would expect from a merger of this sort." This conclusory assertion of obviousness does not satisfy the PSLRA's requirement that Plaintiffs state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind. Moreover, CW-5 is not even alleged to have stated that it was so generally obvious it must have been obvious to the individual Defendants. The statement alleges no more than that CW-5 found it obvious to himself or herself.

that the Defendants must have been aware of them. None of the allegations of statements by the confidential witnesses, separately or as a whole, gives rise to a strong inference that any particular individual Defendant knew about the integration problems or the channel-stuffing, or that these were so obvious that Defendants must have been aware of them.

In ¶ 124, Plaintiffs make the conclusory assertion that the resignations of McMullan and Geday establish scienter. Geday's resignation on November 9, following the close of the class period, does not lead to a strong inference about his state of mind during the class period. Plaintiffs offer no explanation of how McMullan's resignation gives rise to an inference about his state of mind, nor does this Court find a connection apparent.

The following part of this section (¶¶ 125-127) asserts generally that the Globespan Acquisition was a "key business transaction" for Conexant, and that the individual Defendants were involved in making the company's public disclosures. Again, this does not state with particularity facts giving rise to a strong inference that a defendant acted with the necessary state of mind.

In their opposition, Plaintiffs contend that, viewed in its entirety, the SAC adequately alleges scienter. Examination of the Second Amended Complaint as a whole, however, does not lead to any conclusions that differ from those stated above in regard to the parts. Overall, Plaintiffs allege that the individual Defendants had a strong financial interest in completing the Globespan Acquisition and then in covering up the merger's problems. Confidential witnesses knew that there were integration problems and channel-stuffing. Distilled to its essence, Plaintiffs' position on scienter is that the individual Defendants must have known about the integration problems because the merger was so important to the company, and they were high-

8

level management, involved in making particular public statements.  As to the channel-stuffing, examining the SAC as a whole, there is no clear theory of scienter.[5]

As to the integration problems, Plaintiffs' allegations of scienter do not go farther than to say "they must have known" because of their positions in the company.  The Third Circuit rejected the "they must have known" theory in Advanta: "It is well established that a pleading of scienter may not rest on a bare inference that a defendant must have had knowledge of the facts. . . . Likewise, allegations that a securities-fraud defendant, because of his position within the company, 'must have known' a statement was false or misleading are precisely the types of inferences which [courts], on numerous occasions, have determined to be inadequate to withstand Rule 9(b) scrutiny."  180 F.3d at 539 (citations omitted).  This precisely characterizes Plaintiffs' allegations of scienter as a whole, and they are insufficient.

Furthermore, Plaintiffs attempt to bolster this inadequate theory of scienter with theories of financial motivation which the Third Circuit has also rejected as insufficient.  Plaintiffs allege that the individual Defendants were motivated to commit fraud so that they could "take advantage" of their new employment agreements with Conexant.  (See SAC ¶¶ 113, 114, 119.)  In In re Digital Island Sec. Litig., 357 F.3d 322, 331 (3d Cir. 2004), the Third Circuit found inadequate a similar theory about an employment agreement alleged to have induced fraud in the

---

[5] Indeed, the channel-stuffing claim also appears to be inadequate under FED. R. CIV. P. 9(b).  Rather than describing a fraud, the SAC simply alleges that managers instructed employees to "prematurely ship" product at the end of each quarter.  (SAC ¶ 57.)  According to CW-4, excess inventory was sometimes sold to third-world countries.  (Id.)  According to CW-7, "Conexant would offer discounts to customers who agreed to accept products early."  (SAC ¶ 60.)  Exactly what is fraudulent about this conduct is nowhere described.  Plaintiffs do not explain, nor does this Court perceive, how selling products to third-world countries and selling discounted products to customers who agree to accept them early constitute fraudulent or illicit conduct.

9

context of a merger: "Because Plaintiffs' allegations regarding the [defendant's] employment agreement do nothing to distinguish her motivations from those surrounding countless other mergers and acquisitions, the proposed amended Complaint fails to create a strong inference of scienter as required by the PSLRA." Moreover, the Third Circuit noted that it was in accord with the Second Circuit's holding in Kalnit v. Eichler, 264 F.3d 131, 140 (2d Cir. 2001): "an allegation that defendants were motivated by a desire to maintain or increase executive compensation is insufficient because such a desire can be imputed to all corporate officers." Plaintiffs' allegations about the individual Defendants' employment agreements and compensation arrangements similarly fail to distinguish their motivations from those typical of corporate officers in the context of mergers and acquisitions.

The conclusion that Plaintiffs have failed to meet the requirements of the PSLRA for pleading scienter is supported by examination of the SAC under the two prongs of the Third Circuit's "strong inference" formulation in Suprema. Plaintiffs contend that they have satisfied both prongs.

### 1. The recklessness/conscious misbehavior prong

Defendants argue that Plaintiffs have not adequately alleged facts that constitute strong circumstantial evidence that Defendants engaged in recklessness or conscious misbehavior. In response, Plaintiffs contend that they have done so.

The SAC does not contain strong circumstantial evidence that the individual Defendants engaged in conscious misbehavior when they prepared or made the public statements. As discussed above, Plaintiffs do not allege more than that the individual Defendants must have known by virtue of their positions. This cannot suffice as strong evidence of conscious

misbehavior.

Nor have Plaintiffs presented strong circumstantial evidence of recklessness. "A reckless statement is a material misrepresentation or omission 'involving not merely simple, or even excusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'" GSC Partners CDO Fund v. Washington, 368 F.3d 228, 239 (3d Cir. 2004) (quoting Advanta, 180 F.3d at 535). This formulation presents a test with two parts, both of which must be met: 1) the statement involves an extreme departure from the standards of ordinary care; and 2) the statement presents a danger of misleading buyers or sellers that is either known or obvious.

Breaking down the GSC standard in this way, it is apparent that the SAC is insufficient. As to the first element, there is nothing in the SAC which alleges or even refers to a standard of ordinary care for management in preparing or making public statements, nor any allegations about the care the individual Defendants took, or failed to take, in the preparation and making of the statements. Aside from conclusory assertions of Defendants' recklessness, the SAC says nothing whatever about how the Defendants prepared the statements. The allegations of Defendants' reckless scienter have no particularity at all.

Similarly, the SAC does not address the second element, the danger of misleading buyers. As stated, the second requirement may be satisfied by alleging either that the defendant knew of the danger of misleading, or that the danger was so obvious that the defendant must have known about it. There are no allegations in the SAC on which this Court could base an inference about what any Defendant thought about the danger of misleading investors.

*2.     The motive and opportunity prong*

Defendants argue that Plaintiffs have not adequately alleged facts that show that Defendants had both motive and opportunity to commit fraud. In response, Plaintiffs contend that they have done so.

As discussed above, while the SAC makes implications about Defendants' motives, it does not articulate a theory of motive and opportunity with any particularity. Plaintiffs' opposition brief does not help. In the brief, Plaintiffs rest their argument on the allegations that "Defendants used the Globespan Acquisition to renegotiate their respective employment agreements and reap substantial personal gains." (Pls.' Opp. Br. 42.) This appears to be the theory of motive and opportunity in its entirety, and it says nothing about fraud scienter. Moreover, as discussed above, the Third Circuit's observation in <u>Digital Island</u> applies here as well: company managers commonly reap substantial personal gains from mergers, and this says nothing about scienter for fraud. 357 F.3d at 331.

The SAC does not plead particular facts which give rise to a strong inference of fraud scienter, under either the <u>Suprema</u> recklessness/conscious misbehavior prong or the motive and opportunity prong. The First Claim fails to meet the requirements of the PSLRA for pleading the element of scienter. Plaintiffs' First Claim fails to state a valid claim for relief.

Plaintiffs have now been given two opportunities to amend the Complaint. Plaintiffs' opposition brief does not indicate that there is a possibility that Plaintiffs could augment their pleading of scienter so that the First Claim could withstand a motion to dismiss. Nor does this Court perceive any potential for Plaintiffs to further amend the First Claim so as to satisfy the PSLRA's requirements for pleading scienter. Because amendment is futile, Defendants' motion

to dismiss the First Claim will be granted, and the First Claim will be dismissed with prejudice.

      B.      <u>The Second Claim: Violation of § 20(a)</u>

Defendants move to dismiss Plaintiffs' Second Claim, for violation of § 20(a) of the Exchange Act, because there can be no violation of § 20(a) without an independent violation of the securities laws.  See <u>In re Advanta Corp. Sec. Litig.</u>, 180 F.3d 525, 541 (3d Cir. 1999) ("claims under section 20(A) are derivative, requiring proof of a separate underlying violation of the Exchange Act").  Because the Second Claim is derivative of the First Claim, and this Court has found that the First Claim fails to state a valid claim for relief, Defendants' motion to dismiss the Second Claim will be granted, and the Second Claim will be dismissed with prejudice.

      C.      <u>The Third Claim: Violation of § 18(a)</u>

Defendants move to dismiss Plaintiffs' Third Claim, for violation of § 18(a) of the Exchange Act, for failure to plead fraud with particularity and failure to allege actual reliance. Defendants' argument is persuasive.

In <u>Suprema</u>, the Third Circuit examined the pleading adequacy of a § 18(a) claim in the context of a Rule 12(b)(6) motion to dismiss, holding that cursory allegations of reliance and general allegations of reliance are not sufficient:

> SSF Plaintiffs alleged cursorily that they "received, reviewed, actually read, and relied upon" various Form 10-Q filings and the 2000 and 2001 Form 10-K filings. For example, regarding the September 28, 2001, Form 10-K, they allege that they "obtained this document at or about the it [sic] was publicly filed with the SEC, and actually read and relied upon it in making their decisions to invest in Suprema common stock." App. at 367. SSF Plaintiffs failed, however, to plead facts probative of their actual reliance on any specific false statements contained in those filings. Given the lack of allegations to show the requisite causal nexus between their purchase of securities and specific statements contained in the SEC filings, we will affirm the District Court's dismissal of SSF Plaintiffs' Section 18 claims.

Suprema, 438 F.3d at 284.

Plaintiffs' Third Claim is insufficient in light of Suprema: the allegations of reliance are cursory and general, lacking the specificity that the Third Circuit requires to state a claim. The allegations of reliance in the Third Claim of the Second Amended Complaint are brief:

> 155. Plaintiff Sam Phillips and other members of the Class read and relied upon each of the Company's Class Period SEC filings, not knowing that they were false and misleading.
>
> . . .
>
> 157. In connection with his purchases of Conexant stock, Plaintiff Sam Phillips and other class members specifically read and relied on the false and misleading statements regarding: [list of three subject areas of statements]. Plaintiff Sam Phillips' and the Class' reliance was reasonable.

These allegations fail to plead facts probative of actual reliance on specific false statements. In their briefs, the parties debate whether an omission may constitute a false statement. This misses the point. In ¶ 157, Plaintiffs allege reliance on false statements, but state only generalizations about the subject matter of the statements. No specific false statements are identified. Plaintiffs have pled no facts probative of their actual reliance on specific false statements contained in the filings. This is the kind of cursory pleading that the Third Circuit found insufficient in Suprema.

Plaintiffs' Third Claim fails to state a valid claim for relief under § 18(a) of the Exchange Act, 15 U.S.C. § 78r(a). Defendants' motion to dismiss the Third Claim will be granted, and the Third Claim will be dismissed without prejudice.

## **CONCLUSION**

For the reasons stated above, this Court **GRANTS** Defendants' motion to dismiss the Second Amended Class Action Complaint for failure to state a claim upon which relief can be granted, pursuant to FED. R. CIV. P. 12(b)(6).  The First Claim and the Second Claim of the Second Amended Class Action Complaint are **DISMISSED** with prejudice.  The Third Claim of the Second Amended Class Action Complaint is **DISMISSED** without prejudice.  As to the Third Claim only, Plaintiffs are granted leave to amend the Second Amended Class Action Complaint within 45 days of the filing of this Opinion.

 s/ Stanley R. Chesler  
Stanley R. Chesler, U.S.D.J.

Dated: December 4, 2006